Everado CAMPOS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–94–355–CR.

Court of Appeals of Texas, Waco.

July 17, 1996.

---

John M. Hurley, Waco, for appellant.

John W. Segrest, Criminal Dist. Atty., Susan N. Kelly, Asst. Dist. Atty., Waco, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Everado Campos was indicted for the first-degree felony offense of injury to a child. TEX. PENAL CODE ANN. § 22.04 (Vernon 1994). The indictment alleged that Campos "intentionally and knowingly engage[d] in conduct that caused disfigurement and deformity and serious physical and mental deficiency and impairment to [the child-victim] by burning him, and said defendant used and exhibited a deadly weapon, to-wit: an iron, that in the manner of its use and intended use was capable of causing death and serious bodily injury, in the course of the same criminal episode."

On October 6, 1994, Campos entered a plea of nolo contendere. He signed a "Waiver of Jury Trial, Stipulation of Evidence and Judicial Confession, Felony Plea of Nolo Contendere." His judicial confession tracked the language of the indictment. Campos stipulated that he had intentionally and knowingly engaged in the conduct charged and that he had exhibited a deadly weapon, an iron, that was capable of causing death and serious bodily injury. The court accepted Campos' plea and found the evidence sufficient to establish his guilt. The court delayed entering a finding of guilt and ordered a pre-sentence investigation.

On December 7, a visiting judge found Campos guilty and sentenced him to seventy-five years in prison. The following then took place:

[DEFENSE]: If it please the Court, [Campos] would like to consider his appeal rights, and possibly let the Court know at a later time if he wants to appeal.

COURT: You do have the right to appeal, and if you do not have an attorney or the money to employ one, the Court at your request will appoint an attorney to prosecute your appeal in your behalf. Do you understand that?

[CAMPOS]: Yes.

COURT: Is there anything further. [Prosecution], do you have anything?

[STATE]: No, your Honor. Judge, one thing, *is there a deadly weapon finding on that?*

COURT: *There is no deadly weapon finding.*

(Emphasis added). The visiting judge subsequently signed a judgment and sentence which included a deadly-weapon finding.

■ Campos appeals on three points. As a general rule, a plea of guilty or nolo contendere without a plea-bargain agreement waives all nonjurisdictional defects occurring prior to the entry of the judgment. *See Jack v. State,* 871 S.W.2d 741, 742 (Tex.Crim.App. 1994). However, Campos asserts that his first point may be addressed because it involves a "scrivener's error" which occurred after entry of his plea. *See id.* at 743–44.

He asserts that his second and third points may be addressed because his plea was not voluntarily and knowingly made. *Shallhorn v. State,* 732 S.W.2d 636, 637 (Tex.Crim.App. 1987).

### DEADLY WEAPON FINDING

Campos' first point asserts that the judgment and sentence should be reformed to reflect the trial court's finding that he did not use or exhibit a deadly weapon during the commission of the offense, citing *Asberry v. State,* 813 S.W.2d 526, 529–31 (Tex.App.— Dallas 1991, pet. ref'd). The State asserts that the visiting judge made an "inadvertent mistake" and "misspoke" when he stated that there was no deadly-weapon finding. The State also asserts that written orders control over oral pronouncements, citing *Montoya v. State,* 832 S.W.2d 138, 140 (Tex.App.—Fort Worth 1992, no pet.); *Manz v. State,* 787 S.W.2d 580, 582 (Tex.App.—Houston [1st Dist.] 1990, no pet.).

■ Article 42.12, Section 3g(a)(2) of the Code of Criminal Procedure provides that an affirmative finding of the use of a deadly weapon may be made:

> ... when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court....

Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp.1996). An "affirmative finding" requires an express determination by the trier of fact that a deadly weapon was used or exhibited during the commission of the offense. *Polk v. State,* 693 S.W.2d 391, 396 (Tex.Crim.App.1985). An "implied" finding is not an "express" finding. *Hooks v. State,* 860 S.W.2d 110, 112 (Tex.Crim.App. 1993).

■ In a jury case, the court is authorized to enter an affirmative finding in only three situations: when the jury has (1) found the defendant "guilty as charged in the indictment" and the indictment alleged the use of a "deadly weapon"; (2) found the defendant "guilty as charged in the indictment" and the indictment alleged the use of a per se deadly weapon; or (3) affirmatively answered a special issue on deadly weapon use. *Davis v. State,* 897 S.W.2d 791, 793 (Tex.Crim.App. 1995) (citing *Polk,* 693 S.W.2d at 396). When a jury makes an affirmative finding of the use of a deadly weapon, the trial judge has a ministerial duty to enter that finding in the judgment. *State ex rel. Esparza v. Paxson,* 855 S.W.2d 170, 172 (Tex.App.—El Paso 1993, no pet.).

■ When the trial judge is the trier of fact on punishment, he has the authority to make an affirmative finding on the use of a deadly weapon. *Ex parte Franklin,* 757 S.W.2d 778, 780 (Tex.Crim.App.1988); *Fann v. State,* 702 S.W.2d 602, 604 (Tex.Crim.App. 1986) (on rehearing). The trial judge must make a "separate and specific affirmative finding" of the use of a deadly weapon. *Hooks,* 860 S.W.2d at 114.[1]

■ The indictment alleged the use of a deadly weapon, and Campos stipulated that he had used a deadly weapon. The court found "sufficient evidence to establish [Campos'] guilt" but did not find him guilty; rather, it ordered a pre-sentence investigation. The visiting judge found Campos "guilty" and assessed punishment at seventy-five years with the express statement: "There is

---

1. An "implied" finding is not an "express" finding. *Hooks v. State,* 860 S.W.2d 110, 112 (Tex. Crim.App.1993). In *Hooks,* the offense alleged was aggravated assault with a deadly weapon, "to-wit: a firearm." The defendant entered a plea of not guilty. After a bench trial, the court found the defendant guilty and assessed a probated ten-year sentence. *Id.* at 111. The State appealed, arguing that the court was precluded from placing the defendant on probation because the trial judge had "effectively made an affirmative finding of a deadly weapon." *Id.*; Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (affirmative finding of deadly weapon prohibits court-ordered probation). The Court of Criminal Appeals disagreed, determining that the trial court had not entered a "separate and specific affirmative finding" of a deadly weapon. *Hooks,* 860 S.W.2d at 113–14.

no deadly weapon finding." Thereafter, the sitting judge signed a judgment with an affirmative finding that a deadly weapon had been used.

Although this was not a jury trial, we believe the cases interpreting the *Polk* requirements are instructive. *Polk,* 693 S.W.2d at 396. The court did not pronounce Campos "guilty as charged in the indictment" under either of the first two prongs of *Polk. Id.*; *see State ex rel. Esparza,* 855 S.W.2d at 172 (nunc pro tunc order should be entered to show affirmative finding when indictment alleged that a sock was a deadly weapon and jury found the defendant "guilty of murder as charged in the indictment"); *Clark v. State,* 754 S.W.2d 499, 500–01 (Tex.App.—Fort Worth 1988, no pet.) (trial court correct in entering nunc pro tunc judgment to include affirmative finding of deadly weapon when indictment alleged use of a *per se* deadly weapon and jury found defendant "guilty ... as charged in the indictment").

As to the third prong, the court's written judgment does contain a "separate and specific affirmative finding" of the use of a deadly weapon. *Hooks,* 860 S.W.2d at 114. However, that written finding is contrary to the court's oral pronouncement. The Fort Worth and Dallas Courts of Appeal have dealt with similar situations—when the trial judge, as the trier of fact on punishment, says nothing during the sentencing hearing about a deadly-weapon finding, but later enters a judgment with such a finding. In *Turner v. State,* the trial judge commented on the defendant's use of a deadly weapon (a hammer), but did not specifically state that the defendant had used a deadly weapon. 866 S.W.2d 117, 117 (Tex.App.—Fort Worth 1993, no pet.). Four days later, however, the court entered a judgment which included a deadly-weapon finding. *Id.* The following day, the court set aside the judgment, conducted a new sentencing hearing, stated his finding of a deadly weapon, and entered a second judgment worded exactly like the first. *Id.* at 117–18. The Fort Worth Court rejected Turner's appellate complaints "because the rules do not require the trial court to pronounce a deadly weapon finding at a sentencing hearing ... The only requirement

of an affirmative finding of deadly weapon is that the trial court enter the finding in its judgment." *Id.* at 118. Similarly, the Dallas Court held that when a defendant pleads guilty to an indictment charging use of a deadly weapon, the court need not orally pronounce the finding but can subsequently make the finding in its written judgment. *Alexander v. State,* 868 S.W.2d 356, 361 (Tex. App.—Dallas 1993, no pet.); *Marshall v. State,* 860 S.W.2d 142, 143 (Tex.App.—Dallas 1993, no pet.).

Here, unlike those cases, the sentencing judge did not remain silent on whether a deadly-weapon finding would be made. Instead, in response to a direct question by the State, the judge specifically stated that no deadly weapon finding would be made. As the trier of fact on punishment, the judge had authority to make an affirmative finding of a deadly weapon. *Ex parte Franklin,* 757 S.W.2d at 780. Although Campos was indicted for the use of a deadly weapon and pled nolo contendere to the accusations, we believe the making of an affirmative finding was within the court's discretion. *See Hooks,* 860 S.W.2d at 112 n. 4 (although court found defendant guilty of an aggravated assault which alleged the use of a deadly weapon, the court placed the defendant on probation and thus no deadly-weapon finding would be implied).

The State argues that the recitations in the written judgment are presumed to be correct and regular absent a record which affirmatively reflects that an error occurred. *Breazeale v. State,* 683 S.W.2d 446, 449–50 (Tex.Crim.App.1985) (on rehearing). We believe that the record of the sentencing hearing affirmatively reflects that the court did not make a deadly-weapon finding.

Under these facts, we do not believe the court's written judgment accurately reflects the court's decision to not make an affirmative deadly-weapon finding. We sustain point one.

■ An appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention. *French v. State,* 830 S.W.2d 607, 609 (Tex.Crim.App.1992) (approving *Asberry,* 813

S.W.2d at 531). The authority of the appellate courts to reform judgments is not limited to those situations involving mistakes of a clerical nature. *Bigley v. State,* 865 S.W.2d 26, 27 (Tex.Crim.App.1993); TEX.R.APP. P. 80.

Because we believe the judgment erroneously includes an affirmative finding of the use of a deadly weapon, we order the affirmative finding stricken from the judgment and reform the judgment to delete the improper finding. *Davis,* 897 S.W.2d at 794.

## INEFFECTIVE ASSISTANCE OF COUNSEL

 Campos' second point asserts that his plea was not knowingly and voluntarily made because he did not receive effective assistance of counsel. For a plea of guilty or nolo contendere to be knowing and voluntary, it must be made with full understanding of what the plea connotes and of its likely consequences. *Boykin v. Alabama,* 395 U.S. 238, 244, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). If the plea was made as a result of ineffective assistance of counsel, it is not knowingly and voluntarily made. *Ex parte Burns,* 601 S.W.2d 370, 372 (Tex.Crim.App. 1980).

 The test for ineffective assistance of counsel during the plea bargaining process is whether counsel's representation fell below an objective standard of reasonableness and this deficient performance prejudiced the defense. *Ex parte Battle,* 817 S.W.2d 81, 84 (Tex.Crim.App.1991). The burden of proving ineffective assistance of counsel rests with the defendant by a preponderance of the evidence. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App. 1985). A strong presumption exists that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Stafford v. State,* 813 S.W.2d 503, 506 (Tex. Crim.App.1991). Stated another way: Counsel's competence is presumed and the party asserting ineffective assistance must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy. *See id.*

Campos was indicted for the first-degree felony of injury to a child. The range of punishment was five years to ninety-nine years or life with a possible $10,000 fine. Photographs were introduced at the plea hearing, as were exhibits containing medical records and police reports. Campos testified at the plea hearing that he had never been convicted of a felony. The record reveals that Campos asked to be placed on deferred adjudication.

 Campos asserts that trial counsel should have known that the court would assess a lengthy prison term and that reasonable counsel would not have held out hope that Campos would receive deferred adjudication. He argues that the State's exhibits cast doubt on whether the State could have produced an eyewitness to the offense; thus casting doubt on whether the State could have proven him guilty without his judicial confession. He also asserts that the trial court's appointment of a Spanish-speaking interpreter calls into question trial counsel's assertions that he was able to effectively communicate with Campos.

Campos asserts that trial counsel should have reviewed the photographs of the victim's injuries before they were introduced at the plea hearing. There is nothing in the record to reflect that trial counsel did not examine the photographs. The court admonished Campos on the range of punishment and the voluntariness of his plea. Trial counsel represented to the court that he had discussed possible defenses with Campos, that he had talked to several witnesses who had turned out to be character witnesses, and that he had spoken to Campos numerous times at the jail or on the telephone. When the court asked Campos whether he had had problems understanding or conversing with his trial counsel, Campos responded, "No."

We are limited to the record before us on direct appeal. Campos acknowledges that claims of ineffective assistance of counsel are often best developed through motions for new trial and applications for writs of habeas corpus. *See State v. Gonzalez,* 855 S.W.2d 692, 694 (Tex.Crim.App.1993); *Ex parte Duf-*

*fy,* 607·S.W.2d 507, 513 (Tex.Crim.App.1980). Such proceedings provide the defendant an opportunity to expand the record by developing facts concerning the alleged ineffectiveness. For example, in the habeas corpus proceeding in *Ex parte Battle,* the defendant produced the affidavit of trial counsel establishing that counsel had given him improper advice about his eligibility for probation. 817 S.W.2d at 83. Because Battle's plea was based on the erroneous advice of counsel that he was parole-eligible,[2] the Court found trial counsel ineffective. *Id.* at 84.

We do not have anything in the record to indicate the reasoning or strategy of trial counsel. Unlike *Battle,* we do not have the testimony of trial counsel admitting that he gave erroneous advice. *Id.* at 83. Given the record before us, we cannot determine that Campos has met his burden to prove that trial counsel's representation fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense. *Id.* at 84. We overrule point two.

### ADMONISHMENTS

Campos' third point asserts that his plea was not voluntarily and knowingly made because the court did not comply with the required naturalization admonishment. TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon 1989 & Supp.1996). Article 26.13(a)(4) provides that, prior to accepting a plea of guilty or nolo contendere, the court shall admonish the defendant of:

> the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.

*Id.* art. 26.13(a)(4).

The court admonished Campos as follows:

COURT: Do you further understand that if you are not a citizen of the United States of America that a plea of nolo contendere may result in deportation, the exclusion of admission to this country, or the denial of citizenship under the United States Constitution? Do you understand that?

[CAMPOS]: Yes.

Campos argues that the court's use of the language "denial of citizenship under the United States Constitution" rather than use of the statutory language "denial of naturalization under federal law" constitutes a failure to admonish. *Morales v. State,* 872 S.W.2d 753, 755 (Tex.Crim.App.1994).

The complete failure to comply with the admonishment required under article 26.13(a)(4) requires reversal. *Id.* However, article 23.13(c) provides that "substantial compliance" is sufficient unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the court's admonishment. TEX.CODE CRIM. PROC. ANN. art. 26.13(c); *Morales,* 872 S.W.2d at 754.

■ We believe that the court substantially complied with the statutory admonishment.[3] TEX.CODE CRIM. PROC. ANN. art. 26.13(c); *Morales,* 872 S.W.2d at 754. Thus, we find that a *prima facie* showing was made that Campos' plea was knowingly and voluntarily made. *See Morales,* 872 S.W.2d at 754. Campos has not affirmatively shown that he was misled or harmed by the court's substantially correct admonition. TEX.CODE CRIM. PROC. ANN. art. 26.13(c). We overrule point three.

---

2. Battle was sentenced to two life sentences. His attorney had discussed the possibility of probation with him, although the court was prohibited from ordering probation for the offense of aggravated sexual assault. *Ex parte Battle,* 817 S.W.2d 81, 83 (Tex.Crim.App.1991). "The record before us shows that [Battle] pled guilty to the charged offenses while fully believing he was eligible to receive court-ordered probation. By counsel's own admissions, [Battle] could not

have made the plea voluntarily and knowingly." *Id.*

3. Campos' signed, written stipulation contains his acknowledgement: "I understand ... that if I am not a citizen of the United States my plea of NOLO CONTENDERE may result in my deportation, exclusion of admission to this Country, or denial of naturalization under Federal law."

Having reformed the judgment to delete the affirmative finding of use of a deadly weapon, we affirm the judgment as reformed.